STELLA A. HAVKIN, Bar No. 134334
GEORGEANN NICOL, Bar No. 116054
HAVKIN & SHRAGO
ATTORNEYS AT LAW
20700 Ventura Blvd. #328
Woodland Hills, CA 91364
Telephone: (818) 999-1568
Facsimile: (818) 305-6040

Attorneys for Wesley H. Avery, Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| | ) | Case No: 2:11-bk-54302-RN |
| | ) | |
| MEIR ASHER, | ) | **CHAPTER 7 TRUSTEE WESLEY H.** |
| | ) | **AVERY'S OPPOSITION TO DEBTOR'S** |
| | ) | **RENEWED MOTION FOR AN ORDER** |
| | ) | **AUTHORIZING 2004 EXAM OF** |
| | ) | **CHAPTER 7 TRUSTEE, WESLEY H.** |
| | ) | **AVERY AND PRODUCTION OF** |
| | ) | **DOCUMENTS THEREWITH** |
| | ) | **PURSUANT TO BANKRUPTCY RULE** |
| | ) | **2004; MEMORANDUM OF POINTS AND** |
| | ) | **AUTHORITIES; DECLARATION OF** |
| | ) | **WESLEY H. AVERY, DAVID** |
| | ) | **NAHMAN AND STELLA A. HAVKIN IN** |
| | ) | **SUPPORT THEREOF** |
| | ) | |

**[REQUEST FOR JUDICIAL NOTICE
AND OBJECTION TO DOCUMENT
REQUEST FILED CONCURRENTLY
HEREWITH]**

**Date: July 3, 2013
Time: 9:00 a.m.
Courtroom: 1645**

Opposition to 2004 Exam

1  **TO THE HONORABLE RICHARD M. NEITER UNITED STATES BANKRUPTCY JUDGE,**

2  **THE DEBTOR, HIS ATTORNEYS OF RECORD AND ALL INTERESTED PARTIES:**

3      Wesley H. Avery Chapter 7 Trustee, hereby opposes Debtor Meir Asher's second Application

4  for 2004 Examination because Applicant has failed to comply with Local Bankruptcy Rule ("LBR")

5  2004-1.  Pursuant to LBR 2004-1(a), **prior** to filing a motion for examination or for production of

6  documents under Federal Rules of Bankruptcy Procedure Rule 2004, the moving party must attempt

7  to confer with the party to be examined or his counsel for a mutual agreeable time, date, place and

8  **scope of examination**.  While a tentative date of June 18, 2013, was acceptable pending agreement

9  of the scope of examination, no such agreement regarding the scope of examination was ever reached

10 because Counsel for the Debtor did not provide a proper scope of examination that complied with

11 Federal Rules of Bankruptcy Procedure Rule 2004.  Further, Debtor's Motion for Authorizing 2004

12 Exam of the Chapter 7 Trustee, received on May 30, 2013, and to Produce Documents on June 10,

13 2013, failed to comply with the bankruptcy rules regarding the required 14 days to Object to such

14 production. Movant's counsel requested that the scope of examination would consist of the following

15 topics:

16      1. The Trustee's thought process.

17      2. "The whereabouts" of Trustee's professionals between October 2011 and the present.

18      3. Why the Trustee was interviewing third parties. See Declaration of Stella Havkin.

19      Ms. Havkin informed Movant's counsel that she would be filing an Opposition to Motion as

20 written.  See Declaration of Stella A. Havkin.

21      The Motion is composed of **misrepresentations and outright fabrications**.  David Nahman

22 has never been employed by the Trustee in this case.  See Declaration of Wesley H. Avery.  This

23 Motion was filed well over a year after the alleged facts giving rise to the instant Motion took place.

24 The reason it has been filed now is that the District Court for the second time denied the Debtor's

25 alias brother Ilan Asher's Motion to Withdraw the Reference, this Court granted the Trustee's Motion

26 to Amend the Complaint to add a cause of action for Quite Title and the Trustee has filed the lis

27 pendens against the subject properties and the Trustee has located undisputable evidence that the

28 Debtor has failed to disclose his interest in a valuable company - TSF Wholesale & T Shirt Printing,

1  LLC ("TSF").

2      David Nahman's blank check which is the focus of the 2004 exam has nothing to do with the

3  Debtor and his bankruptcy case.  David Nahman is the unfortunate creditor of one of the Debtor's

4  undisclosed companies and has done business with both the Debtor and Declarant Gideon Eliassi as

5  late as early 2011, a few months prior to the filing of the bankruptcy.

6      This Debtor has no credibility.  This is because among others:

7      (1) In 2007, the Debtor stipulated that to the facts of a crime in a case by the California

8  Attorney General against him for Department of Motor Vehicles fraud and in which he was being

9  prosecuted for having obtained a driver's license with his brother' name, his brother's social security

10  number, the Debtor's picture and thump print.  One day after the fraudulent driver's license was

11  obtained, the Debtor purchased the properties commonly known in this case as the "Complex" and

12  the Beverly Hills estate.  See Exhibit "3" to the Request for Judicial Notice.

13      (2) The Debtor is a convicted felon in Nevada for bad checks.  On May 6, 2009, Clark County

14  District Attorney filed a complaint for felony in two cases against Meir Asher - 09F02638 and

15  09C254252.   On May 19, 2009, the Debtor plead guilty to those crimes and was ordered to provide

16  restitution.  See Exhibit "2" to the Request for Judicial Notice.

17      (3) On April 1, 2013, in the related case of the Ritz Hotel Casino LTD  v.  Meir Asher case

18  number 2:12-ap-01137-RN, the Debtor stipulated to the nondischargeability of nearly $900,000

19  pursuant 11 U.S.C. §523(a)(2)(A).  The claims in that action were that the Debtor provided checks

20  to the Ritz Casino on a closed bank account.  See Exhibit "3" to the Request for Judicial Notice.

21      (4) In the case of Von Dutch v. TSF, the Debtor testified he was an owner of TSF.  Yet, when

22  the Debtor filed for bankruptcy he deliberately failed to disclose his valuable interest in TSF.  See

23  page 4 lines 6 through 7 of paragraph 7 of the United States District Court's Findings of Fact and

24  Conclusions of Law attached as Exhibit "4" to the Request for Judicial Notice.  In fact, counsel for

25  the Debtor filed an opposition to the Trustee's Motion for Turnover, continuing to maintain the lie

26  that the Debtor is only a "manager" of TSF, a fact that was also not disclosed in schedule I or the

27  statement of affairs.  The Opposition to the Motion for Turnover, Schedule I and the Statement of

28  Affairs filed in this case are attached as Exhibits "5" to the Request for Judicial Notice.

1    As such, this Debtor who had no trouble in going to the DMV and getting a driver's license

2    with his brother's name and social security number with his own picture and finger print so that he

3    could buy valuable property the next day in order to hide from his ex-wife and creditors, who has no

4    hesitation in writing checks on closed accounts for millions of dollars, who has no trouble failing to

5    disclose assets in his bankruptcy petition, would have no hesitation in creating a fable to discredit the

6    Trustee or David Nahman.

7    Furthermore, since the Trustee has filed an adversary proceeding against the Debtor, an

8    examination pursuant to Rule 2004 is not appropriate.

9    **I.**

10   **THE DEBTOR'S INTENTION  IN TAKING THE TRUSTEE'S 2004 EXAM IS IN BAD
     FAITH AND IS A TRANSPARENT ATTEMPT TO INTIMIDATE AND HARASS THE**

11   **TRUSTEE IN ORDER TO INFLUENCE HIM TO DISMISS HIS TURNOVER ACTION
     AS WELL AS THE OBJECTION TO DISCHARGE CASE AGAINST THE DEBTOR**

12   **AND HIS ALIAS BROTHER ILAN ASHER IN WHOSE NAME THE DEBTOR HAS
     BEEN HIDING  VALUABLE PROPERTIES SINCE 2000**

13

14   In his Motion, the Debtor stated that his purpose for the 2004 Exam of the Trustee is to "shed

15   light on the case" and to expose the Trustee's alleged improper conduct employed in the

16   "administration of the Debtor's estate." Since the Debtor continues to hide assets in his brother's Ilan

17   Asher' name, and as yet there are no assets for the Trustee to administer, the ground set forth in the

18   Motion is improper.   Moreover, since the Debtor is not seeking information as to the factual basis

19   of the Trustee's claims, his request for a 2004 Exam is clearly brought in bad faith in an attempt to

20   intimidate and harass the Trustee in order to influence him to dismiss his turnover action and 11

21   U.S.C. §727 case against the Debtor and his alias Ilan Asher through whom the Debtor used and

22   continues to use to hide his valuable properties know as the "Complex" and the home in Beverly Hills

23   as well as the adversary proceeding against his company - TSF.

24   Further, in his Motion, the Debtor tells a fanciful tale of  $20,000.00 allegedly paid in cash

25   to David Nahman by Gideon Eliassi, because Meir Asher and Ilan Asher were allegedly "too close"

26   to the bankruptcy case.  The money was allegedly to be given to the Trustee in order for the Trustee

27   to dismiss his case against Meir Asher and Ilan Asher.   In order to promote this fable to the Court,

28   the Debtor presents a blank, undated check number 115 for $20,000.00 drafted on David Nahman's

1   account at Hamni Bank.  The Debtor then proceeds with his story about how David Nahman allegedly

2   told him that Mr. Nahman would get Meir Asher's bankruptcy case dismissed if Gideon Eliassi paid

3   $20,000.00 in cash to David Nahman and David Nahman would give him a check in the amount of

4   $20,000.00 as an assurance in case the Trustee did not dismiss the bankruptcy case.  The purpose of

5   this fabricated story is to cast aspersions on David Nahman and the Trustee, and not for any proper

6   purpose regarding a 2004 Exam.  In his Declaration attached hereto, David Nahman exposes the

7   Debtor's intentional falsehood regarding the check.

8           The true story about the $20,000.00 check is as follows:

9           Prior to the filing of the Debtor's bankruptcy David Nahman had the misfortune of having

10  done business with the Debtor and Declarant Gideon Eliassi.  One year prior to the filing of Meir

11  Asher's bankruptcy, Mr. Nahman placed a clothing order with Declarant Gideon Eliassi.  Mr.

12  Nahman has done a great deal of business with Mr. Eliassi in the past eight years.  Pursuant to their

13  business practices, in order to place the order, Gideon Eliassi required that Mr. Nahman first provide

14  him with a blank check in the amount of **$20,000.00**.  The second part of the transaction would take

15  place when the clothing order was ready for pick up and Mr. Nahman would then provide Gideon

16  Eliassi with $20,000.00 in cash to replace the check.

17          When Gideon Eliassi was not able to provide certificates of authenticity to David Nahman for

18  the clothing he had ordered from him, David Nahman **stopped payment** on the **very same**

19  $20,000.00 check that the Debtor and Gideon Eliassi declare was required by the Debtor from David

20  Nahman to assure that the Trustee would dismiss the Debtor's bankruptcy case.  **The stop payment**

21  **on this check by David Nahman took place one year before Meir Asher filed for bankruptcy.**

22  A true and correct copy of the stop payment dated February, 2011, a year before the alleged fanciful

23  meeting took place, is attached to the Declaration of David Nahman as Exhibit "1."  See Declaration

24  of David Nahman.  As is evident from an examination of the check and stop payment notice, the

25  account number is the same and the check number is the same.  The stop payment reflects that the

26  check had originally been provided to Gideon Eliassi.  __After the Trustee provided all of the above__

27  __evidence to the Debtor in the form of opposition to the first application for 2004 examination,__

28  __Debtor's counsel ignored this information and instead elected to file the same Motion again and__

1    **disregard the truth regarding the $20,000.00 check.**    This conduct is sanctionable.

2        Further, the Debtor and Mr. Eliassi fail to tell the true story to the Court that David Nahman

3    was owed money by one of the Debtor's undisclosed companies and in which the Debtor has an

4    interest in - TSF - and that David Nahman had met with them to discuss the money that "TSF" owed

5    to David Nahman for defective clothing orders that he had placed in 2011 with "TSF", which he had

6    returned to "TSF" and for which David Nahman never received reimbursement of $280,000.00  See

7    Declaration of David Nahman.

8        The Debtor and Mr. Eliassi also fail to reveal that on behalf of "TSF", Regina Isaac who

9    has previously submitted a declaration in this case in connection with bank accounts on which

10    Debtor's counsel, David P. Beitchman, is listed as one of the signatories.  Ms Isaac communicated

11    with David Nahman in emails and stated that TSF's refund as promised by the Debtor was going

12    to be guaranteed by a condominium owed outright by E&O Holdings, LLC.  True and correct

13    copies of the emails from Regina Isaac to David Nahman dated February, 2012 are attached to the

14    Declaration of David Nahman as Exhibit "2."  See Declaration of David Nahman.    These emails

15    are of course prior to the alleged meetings with the Debtor and Mr. Eliassi.   Further, they fail to

16    disclose that the Debtor through one of his companies has invested over a million dollars in Mr.

17    Eliassi's company which has not been repaid and as such, Mr. Eliassi is behold to the Debtor.  See

18    Declaration of David Nahman.

19        In addition, the Trustee has no knowledge of any alleged meetings between David Nahman

20    and Declarants.  He never had any conversations either on the speaker phone or otherwise with

21    Mr. Nahman regarding a purported settlement of the bankruptcy case.  Mr. Nahman was not

22    authorized to discuss any settlement of the case.  See Declaration of Wesley H. Avery filed

23    concurrently herewith.  The Debtor was not represented by counsel at the time of the alleged

24    meetings.

25        Finally, this Debtor and his friends have no trouble committing crimes in attempt to

26    substantiate their lies to this Court.  The Debtor and Mr. Eliassi claim to have tape recorded the

27    alleged conversations with David Nahman.  However, **it is a crime in California and under**

28    **Federal law to record people without their knowledge and consent.**  California Penal Code

§631 and 18 U.S.C. 2511(2)(d).

## II.

**THE DOCUMENT REQUEST THAT ACCOMPANIES THE 2004 MOTION IS YET ANOTHER ATTEMPT TO HARASS THE TRUSTEE**

In addition to his attempt to harass and intimidate the Trustee so he will dismiss his turnover and 11 U.S.C. §727 action against him, the Debtor requests that the Trustee provide him with privileged documents.  The document requests seeks, among others, "the whereabouts" of the Trustee's employees between October 2010 and the present.  Why the Debtor would be entitled to know the comings and goings of the Trustee's employees such as his secretary is incomprehensible. Why the Debtor or his special counsel would need to know whether the Trustee's secretary had lunch on October 10, 2010 and at what time?  The answer is no reason at all.

The document request also seeks to know "the whereabouts" of Trustee's professionals between October 2011 and the present.  Why would the Debtor be entitled to know where Trustee's counsel has been in the past 18 months?  What possible purpose would it serve for the Debtor to know that Trustee's attorneys had hearings in other cases unrelated to this Debtor on for example in November, 2011?  The answer is none.

The last question of the document request seeks documents which are "material to the Trustee's investigation of the Debtor and as necessary to the administration of the case."   Apart from the fact that this information is privileged, the document request is incredibly overbroad, vague and ambiguous. The Trustee is filing his objections to the document request concurrently herewith.

Finally, the Motion is purported to be brought by an "independent special counsel" for the Debtor hired solely for this purpose.  However, Mr. Martirosyan as evidenced by the letterhead on his pleadings operates out of the **same suite** as Debtor's attorneys in the adversary proceeding of Avery v. Asher, the same attorneys who represented the Debtor in his divorce case, the same attorneys who filed the original bankruptcy proceeding which failed to disclose the Debtor's entities that they created on his behalf and the same attorneys that have represented both Ilan and

1  Meir Asher for a decade prior to the filing of the bankruptcy.

2        On the basis provided herein, the Chapter 7 Trustee requests that the Court deny the

3  Debtor's Order Authorizing a 2004 Exam of the Trustee.

4

5  Dated: June 4, 2013                          HAVKIN & SHRAGO

6
                                               By:    //Georgeann Nicol
7                                                   Georgeann Nicol
                                                   Attorney for  Wesley H. Avery,
8                                                   Chapter 7 Trustee

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF STELLA A. HAVKIN

I, Stella A. Havkin, declare:

1.      My firm is counsel to Wesley H. Avery, Chapter 7 Trustee for the Estate of Meir Asher and as Plaintiff in the instant case.  I  am an attorney at law licensed to practice before all of the courts of the State of California and this Court.  All of the facts stated herein are true and correct to the best of my personal knowledge and if called as a witness could and would competently testify thereto.

2.      While a tentative date of June 18, 2013, for the Rule 2004 Exam was acceptable pending agreement of the scope of examination, no such agreement regarding the scope of examination was ever reached because Debtor's counsel for this Motion did not provide a proper scope of examination that complied with Federal Rules of Bankruptcy Procedure Rule 2004.   I informed Movant's counsel that I would be filing an Opposition to Motion as written.

3.      I received the Debtor's Motion for Authorizing 2004 Exam of the Chapter 7 Trustee, on May 30, 2013 with the deadline to Produce Documents on June 10, 2013.  This is an improper amount of time for production.

4.      Movant's counsel requested that  the scope of examination would consist of the following topics:

       1. The Trustee's "thought process."

       2. "The whereabouts" of Trustee's professionals between October 2011 and the present.

       3. Why the Trustee was interviewing third parties.

I informed him that this subject matter is privileged, improper and nonsensical.

I declare under penalty of perjury under the laws of United States of America that the foregoing is true and correct.

Executed this 4th day of June 2013  at Woodland Hills, California.


_____//Stella A. Havkin_____
Stella A. Havkin

## DECLARATION OF WESLEY H. AVERY

I, Wesley H. Avery, declare as follows:

1.      I am the duly-appointed, qualified, and acting Chapter 7 Trustee for the Estate of Meir Asher, the Debtor in this case. I have personal knowledge of the facts set forth herein and if called as witness could and would competently testify thereto.

2.  In or about November 2011, I asked David Nahman to inquire if anybody he knew had any information regarding the Debtor holding himself out as his brother Ilan Asher in order to hide assets. David Nahman stated he could not work on the case and as such, he was never employed at any time in this case.

3.  I have never authorized the discussion of any settlement between David Nahman and the Debtor or anyone connected with the Debtor nor I am aware of any settlement discussions with the Debtor or anyone connected with him about the settlement of this case. I employed attorneys for that purpose early on in the case.

4.  David Nahman never placed me on a speaker phone with the Debtor to discuss the settlement of this case or for that matter at any time about any subject matter.

5.  I have no knowledge of any of the allegations set forth in the Declarations of Meir Asher and Gideon Gaspar or the alleged settlement agreement attached as Exhibit "2" to the Declaration of Meir Asher or alleged meetings between them. I have no knowledge of the purported payment nor have I received any funds in connection with this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 28, 2013 at Valencia, California.

Wesley H. Avery

## DECLARATION OF DAVID NAHMAN

I, David Nahman, declare as follows:

1.      I have personal knowledge of the facts set forth herein and if called as witness could and would competently testify thereto.

2.      In 2012, Wesley H. Avery asked me to inquire if anybody I knew had any information regarding Meir Asher holding himself out as his brother Ilan Asher.  I told Mr. Avery that I could not work on this case.

3.      I have known Gideon Eliassi and Meir Asher for over 10 years as I had previously done business with both of them in the clothing industry.  The undated and blank indicated payee check No. 115 in the amount $20,000.00 that Mr. Eliassi and Mr. Asher declare was made out by me to get Meir Asher's bankruptcy case dismissed is false.   I had provided this check to Mr. Eliassi in the fall of 2010 to secure a clothing order from Mr. Eliassi's company.   I have done this many times. When Mr. Eliassi could not fill the order that I had placed with his company and secured by the $20,000.00 check, I placed a stop payment on the check in February, 2011.  A true and correct copy of the stop payment that I placed on that check is attached hereto as Exhibit "A."   Mr. Eliassi has told me that Meir Asher through his companies invested $1,200,000 in Mr. Eliassi's company which has not been repaid.

4.      I did not discuss with Meir Asher, Gideon Eliassi or anyone connected with Meir Asher the settlement of this bankruptcy case or the related adversary proceeding.  I have never placed Wesley H. Avery on a speaker phone with Meir Asher to discuss the settlement of the case or for that matter at any time about any subject matter.

5.      Several months after I told Wesley H. Avery that I could not work on this case, I met with Meir Asher and Gideon Eliassi to discuss the money that TSF Wholesale & T Shirt Printing, LLC ("TSF") owed to me for defective clothing orders that I had placed in or around 2010 with TSF,

1  which I had returned to TSF and for which I never received reimbursement for the defective clothing

2  sold to me by TSF. It is my understanding the Meir Asher is one of the owners of TSF and he is the

3  one I dealt with in placing my order with TSF. On behalf of TSF, Regina Isaac communicated with

4  me in emails and stated that TSF's refund as promised by Meir Asher were going to be guaranteed by

5  a condominium owed by E&O Holdings, LLC. True and correct copies of the emails between

6
7  myself and Regina Isaac of TSF regarding the same in January and February, 2012 are attached

8  hereto as Exhibit "B." I have never received any repayment of the funds TSF owes to me. In

9  connection therewith, in January and February 2012, I had spoken with Regina Isaac regarding the

10  payment of my refund.

11    6.    I did not prepare any settlement agreement between myself, Meir Asher, Ilan Asher or

12  anyone in connection with them. I did not prepare any settlement agreement on behalf of the

13  bankruptcy estate. I have not received any moneys from Meir Asher, Ilan Asher or Gideon Eliassi
14
15  any alleged settlement with them.

16    7.    I have never met Mr. Beitchman under any circumstances, despite Meir Asher's

17  assertions that I met Mr. Beitchman with him at the Santa Monica Courthouse. I do not know what

18  Mr. Beitchman looks like.

19    I declare under penalty of perjury that the foregoing is true and correct.

20  Executed on June 5, 2013 at Beverly Hills, California.

21
22
23  David Nahman
24
25
26
27
28

**EXHIBIT A**





**Hanmi Bank**

## STOP PAYMENT

| | | |
|---|---|---|
| PAYABLE TO | CHECK NO | DATE 02-25-11 |
| GIDEON ELIASSI | 115 | DATE OF CHECK | AMOUNT OF CHECK |
| REASON FOR STOP PAYMENT | TIME ACCEPTED | $20,000.00 |
| DISPUTE | 11:15  X A.M.  P.M. | DATE STOPPED 02-25-11 | REMARK |

The undersigned agrees to reimburse you all damages, cost and expense to which you may be subjected, by reason of refusal to honor said check, it is hereby understood that you are to use every reasonable effort to stop said check, but should the same be paid after due diligence upon your part, you are not to be held liable in any way, and said check shall be charged against the account indicated below. This order will automatically expire six months from date, unless previously released or renewed in writing. Closing of the account upon which his check is drawn, or transfer of same to another branch by the undersigned, shall automatically cancel this order.

| | | |
|---|---|---|
| SIGNATURE OF DEPOSITOR X | ORDER ACCEPTED BY | FEE RECEIVED |
| TELEPHONE NO  310-467-6681 | | CASH |
| | | CHARGE $ |
| DRAWN BY (MAKER NAME) | | X WAIVED $  Amount |
| DAVID NAHMAN | | ACCOUNT NUMBER |
| | | 2006 30300 |

CUSTOMER COPY

**EXHIBIT B**

**From:** Gina Isaac <gina@tsfglobal.com>
**Subject:** Re: Meir Asher guarantee
To: davidnahman@yahoo.com
Date: Monday, February 27, 2012, 9:13 AM

Thanks again
Sent from my Verizon Wireless BlackBerry

---

**From:** "davidnahman" <davidnahman@yahoo.com>
**Date:** Mon, 27 Feb 2012 17:10:01 +0000
**To:** Gina Isaac<gina@tsfglobal.com>
**ReplyTo:** davidnahman@yahoo.com
**Subject:** Re: Meir Asher guarantee

Shouldn't take more than a couple of days. I'll let you know.
Sent via BlackBerry from T-Mobile

---

**From:** "Gina Isaac" <gina@tsfglobal.com>
**Date:** Mon, 27 Feb 2012 09:10:13 -0800
**To:** <davidnahman@yahoo.com>
**Subject:** RE: Meir Asher guarantee

Thank you.  Can you please advise how long it will take to process?

**Regina Isaac**

TSF Wholesale & T Shirt Printing, LLC

3400 South Main Street

Los Angeles, CA 90007

(323) 235-1555 ext 117

1

(323) 234-4111 fax

**From:** davidnahman [mailto:davidnahman@yahoo.com]
**Sent:** Monday, February 27, 2012 9:00 AM
**To:** Gina Isaac
**Subject:** Re: Meir Asher guarantee

Great. Thank you.

Sent via BlackBerry from T-Mobile

**From:** "Gina Isaac" <gina@tsfglobal.com>

**Date:** Mon, 27 Feb 2012 09:02:08 -0800

**To:** <davidnahman@yahoo.com>

**Subject:** RE: Meir Asher guarantee

Hi there

It is free and clear and today's market value is approx $358k.

**Regina Isaac**

TSF Wholesale & T Shirt Printing, LLC

3400 South Main Street

Los Angeles, CA 90007

(323) 235-1555 ext 117

(323) 234-4111 fax

**From:** davidnahman [mailto:davidnahman@yahoo.com]
**Sent:** Monday, February 27, 2012 8:57 AM
**To:** Gina Isaac
**Subject:** Re: Meir Asher guarantee


Is it a free and clear property. How much is it worth?

Sent via BlackBerry from T-Mobile


**From:** "Gina Isaac" <gina@tsfglobal.com>

**Date:** Mon, 27 Feb 2012 08:58:00 -0800

**To:** <davidnahman@yahoo.com>

**Subject:** Meir Asher guarantee


Hi David-


Per our conversation the following info should be used to guarantee for Meir Asher payments.


Property:


5016 Bakman Ave #111

North Hollywood, CA 91601


Owner: E & O Holdings, LLC


Please let me know if you need anything else.


Thank you

**Regina Isaac**

TSF Wholesale & T Shirt Printing, LLC

3400 South Main Street

Los Angeles, CA 90007

(323) 235-1555 ext 117

(323) 234-4111 fax

4

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

20700 Ventura Boulevard, Suite 328, Woodland Hills, CA 91364

A true and correct copy of the foregoing document entitled (*specify*): Chapter 7 Trustee's Opposition to Debtor's
Renewed Motion for 2004 Exam; Declarations of Wesley H. Avery, David Nahman and Stella A. Havkin

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 06/05/2013, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

wamiracle6@yahoo.com, jmoattrustee@gmail.com;C117@ecfcbis.com; wavery@7trustee.net

jkreis@attglobal.net  rvarozian@bzlegal.com       jwang@cookseylaw.com, jodom@cookseylaw.com
ustpregion16.la.ecf@usdoj.gov   rickbaum@hotmail.com, rickbaum@hotmail.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)  06/05/2013, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Honorable Richard Neiter                Edgar Martirosyan, Esq.
United States Bankruptcy Judge          16130 Ventura Boulevard, Suite 570
255 E. Temple Street, Suite 1682         Encino, CA 91436
Los Angeles, CA 90012

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/05/2013 | Stella A. Havkin | //Stella A. Havkin |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |